Gregory B. Smith (USB #6657)
GREG SMITH & ASSOCIATES (ALAPC)
111 East 5600 South, Suite 105
Murray, Utah 84107
Telephone: (801) 651-1512
email: gs@justiceinutahnow.com

*Attorney for Plaintiff Jill Heath*

IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JILL HEATH,<br><br>                Plaintiff,<br>*vs.*<br><br>IASIS HEALTHCARE/Steward Medical dba JORDAN VALLEY MEDICAL CENTER. a Utah corporation registered and doing business in the State of Utah,<br><br>                Defendants. | Civil No.<br><br>Judge<br><br>(JURY TRIAL DEMANDED) |

**COMPLAINT FOR EMPLOYMENT GENDER WAGE DISCRIMINATION AND RETALIATION**

_____

Plaintiff, JILL HEATH hereby complains against, IASIS

HEALTHCARE/Steward Medical dba JORDAN VALLEY MEDICAL

CENTER seeking relief as follows:

1

## PARTIES

1.  Plaintiff, JILL HEATH at all time mentioned herein was a resident of the State of Utah. All acts herein complained occurred in the State of Utah.

2.  IASIS HEALTHCARE/Steward Medical is a Tennessee corporation dba JORDAN VALLEY MEDICAL CENTER registered to do business in the state of Utah (Entity No. 7142070-0151). It is a business entity and is an "employer" under the Civil Rights Act of 1964. 29 USCA.

## STATUTORY PREREQUISITES TO SUIT

3.  Plaintiff is awaiting a Right to Sue under Title VII, and will ask the Court to bring in that claim when she is granted such. Regarding the ADEA claim, more than 60 days has passed since she filed with the UALD, and proceeds on the Equal Pay Act (29 U.S.C. §§ 621–634).

## JURISDICTION AND VENUE

4.  This action is brought pursuant to the Title VII, the ADA, ADEA, the Equal Pay Act (29 U.S.C. §§ 621–634); the Utah Antidiscrimination Act that

2

specifically prohibits discrimination based on sexual orientation, or gender identity (*UT Code Sec. 34A-5-106*); and the Lilly Ledbetter Fair Pay Act of 2009[1], the federal fair employment laws were amended so that each paycheck affected by an employer's prior discriminatory practice or decision constitutes an unlawful discriminatory act that triggers a new deadline for filing a pay discrimination claim. The law applies to all public employers and private employers with 15 or more employees.

5. The Court has pendent jurisdiction of the related state law claims asserted under 28 U.S.C. § 1367 because they arise from a nucleus of operative facts common to the causes of action arising under the complaint, and because exercising pendent jurisdiction serves the interests of judicial economy, convenience and fairness to the parties.

6. Venue is proper in this Court pursuant to Utah Code § 78B-3-304(2) and 28 U.S. Code § 1391 because all actions alleged herein occurred within the State of Utah.

---

## PRELIMINARY STATEMENT

Plaintiff, Jill Heath brings this action to remedy acts of gender wage employment discrimination and retaliation perpetrated against her by Jordan Valley Medical Center.

Plaintiff contends that Jordan Valley Medical Center officials discriminated against her by treating her as though she had diminished capacity because of her gender.

She was treated differently and less favorably because of her gender.

Jordan Valley Medical Center officials' actions, tone of voice, and daily discriminatory treatment of her had a disproportionate negative impact on her work environment, mental and physical health.

The implication and treatment were that Heath was not entitled to the same pay as male employees. All of Jordan Valley Medical Center's discriminatory actions, verbal tone of voice, and isolated treatment, because of Heath's gender was mentally harassing.

Jordan Valley Medical Center's preference for male employees to Heath was obvious in the payment of her hourly wage despite her superior academic, empirical training, skill and experience than male employees.

4

Heath is a member of a class protected against gender discrimination according to law set forth above.

Heath's male supervisors sexually discriminated against Heath because of her gender and their obvious preference to male employees.

The gender discrimination of Heath created the assumption among other employees that Heath was not as qualified as men and she was treated accordingly. Heath's gender related discriminatory treatment created a subtle and pervasive hostile work environment.

Jordan Valley Medical Center's blatant discrimination and unfair treatment mentally and physically discriminated and harassed Heath to the point it created a difficult and offensive work environment.

Upon Heath seeking equal pay as her male coworkers with less academic credentials, training and skill, Heath was promptly retaliated against and subjected to an offensive and intolerable work environment.

## SPECIFIC ALLEGATIONS OF FACT

1. At all times relevant, Jordan Valley Medical Center has been and continues to be an "employer" engaged in interstate commerce within the meaning of the relevant statutes.

2. At all times material herein, Plaintiff was an employee of Defendant within the meaning of Title VII, the ADA, ADEA, and the Equal Pay Act (29 U.S.C. §§ 621–634). As an employee of Defendant for purposes of the Title VII, the ADA, ADEA, and the Equal Pay Act (29 U.S.C. §§ 621–634), Plaintiff was protected against discrimination on the basis of gender with respect to the compensation, terms, conditions, or privileges of her employment.

3. Jordan Valley Medical Center hired Ms. Heath on or about September of 2017.

4. Keith Poulsen and Keith Hodson were Heath's immediate supervisors and managers.

5. When Heath was hired, Poulsen told Heath to take the wage offered to her and after she was hired, he would go to Human Resources and request that her wage be matched to other male employees with equal education, experience, skill, effort, responsibility, and under similar working conditions.

6

6. Poulsen was aware that Heath had terminated her employment at two other places of employment to accept employment at Jordan Valley West.

7. Heath accepted Poulsen's offer in reliance on his promise that she would be paid an amount equal or better than other Computed Tomography (CT) employees because of her credentials, training, experience, and skills. This included male employees.

8. Many months passed and Heath had not received a pay match as promised.

9. Additionally, Poulsen told Heath after a CT meeting, that he had spoken with Melissa Miller, the current Director of Human Recourse, and he was waiting for a response.

10. Heath believed him and was waiting patiently. She trusted Poulsen and did not believe that he would be dishonest.

11. A few more months passed and after another CT Meeting, Heath spoke with Poulsen. Poulsen had thanked her for picking up so many overtime shifts and for contributing to the meeting in order to solve the scheduling issues facing their modality at the time.

12. Poulsen was grateful and acknowledged Heath personally.

13. Heath thanked him and again asked him about her wage increase to match other male employees. Paulsen said he was still waiting on a response from Melissa Miller at HR.

14. It was now almost nine months after Heath's hire date.

15. Heath decided to speak with Melissa Miller personally about why it was taking so long to get approval for her wage increase.

16. Melissa Miller was shocked and surprised and told Heath that Keith Poulsen had never requested a pay increase for her as promised that was equal to other male employees.

17. Heath was disappointed and confused as to why Poulsen would not follow through on their agreement to match her pay with other male employees.

18. Heath learned from other coworkers that her education, experience, skill, effort, and responsibility, exceeded those of her male coworkers.

19. Other male employees hired after Heath with less education, skill, experience and training were paid more than Heath.

20. Heath confronted Paulsen about lying to her that he had spoken with Melissa Miller regarding a pay increase equal to other less qualified male employees.

21. Poulsen became angry and started yelling telling Heath that he could not just walk into HR and demand a wage increase for her.

22. Heath expressed her concern about the wage discrepancy with herself and other male coworkers and Poulsen became more aggressive and threatened to fire Heath for discussing wages at work.

23. Poulsen tried to intimidate Heath by saying it was against company policy.

24. Heath replied to Poulsen in a calm professional manner that is was not against company policy; that she had never read or signed any paperwork agreeing to not discuss her wages at work.

25. Heath then stated that she was going to HR to let them know of their conversation.

26. Poulsen yelled, "FINE! You are just making it easier for me to fire you."

27. Heath felt bullied and intimidated into not pursuing her request for pay equal to other less qualified and younger male employees.

28. Poulsen and Keith Hodson, another manager, immediately began retaliating against Heath by leaving intimidating voice messages and hanging up.

29. Poulsen and Hodson made working conditions and Heath's working environment so intolerable and emotional distressing that she was forced to leave.

30. Ms. Heath was willing to take upon herself all tasks given to her.

31. She had done her best to honor and value her job.

32. She had never been written up, nor had she been tardy or negligent in her duties.

33. Jordan Valley Medical Center knew of the protected activity by Ms. Heath.

34. Jordan Valley Medical Center then retaliated against Ms. Heath for asking for pay equal to her male counterparts.

35. Her forced leaving was a direct result of her good faith request for her gender related concerns.

36. Prior to leaving because of the intolerable working environment, Heath had not failed at any material task.

37. Jordan Valley Medical Center breached its agreement with Heath and forced her to leave by way of retaliation for exercising her legal right to question why she was being discriminated against because of her gender.

38. Heath contends that Jordan Valley Medical Center officials discriminated against her by treating her as though she had diminished capacity because of her gender.

39. She was treated differently and less favorably because of her gender.

40. Jordan Valley Medical Center officials' actions, tone of voice, and daily discriminatory treatment of her affected her mental and physical health.

41. All of Jordan Valley Medical Center's discriminatory actions, verbal tone of voice, isolated treatment, because of Heath's gender were mentally harassing.

42. Jordan Valley Medical Center's preference for male employees to Heath was obvious in the payment of higher wages to male employees that were less qualified.

43. Jordan Valley Medical Center's gender related discriminatory treatment created a subtle and pervasive hostile work environment.

44. Jordan Valley Medical Center's blatant discrimination and unfair treatment mentally and physically discriminated and harassed Heath to the point it created a difficult and offensive work environment.

45. But for the concern Heath raised about gender discrimination, Jordan Valley Medical Center would never have terminated her.

46. Jordan Valley Medical Center took adverse action against Ms. Heath because of her gender.

## CAUSES OF ACTION

### Count One

**(Gender Discrimination in Violation of Title VII, the ADA, ADEA, the Equal Pay Act (29 U.S.C. §§ 621–634) Utah Antidiscrimination Act)**

47. The foregoing paragraphs are realleged and incorporated herein by reference.

48. The Jordan Valley Medical Center's conduct as alleged above constitutes discrimination based on gender discrimination in violation of Title VII, the ADA, ADEA, the Equal Pay Act (29 U.S.C. §§ 621–634)), and the Utah Antidiscrimination Act.

12

49. During her employment, Plaintiff possessed the education, experience, skills and background necessary to perform the duties of her position. As such, Plaintiff was qualified for the position.

50. Defendant, through its managers and supervisors treated Plaintiff differently and less favorably from male employees by paying her less than male employees with less education, experience, and skill.

51. The discriminatory actions of Defendant constitute an adverse employment action for purposes of Title VII, the ADA, ADEA, the Equal Pay Act (29 U.S.C. §§ 621–634)), and the Utah Antidiscrimination Act.

52. The adverse employment actions were taken because of Plaintiff's gender and was the motivating factor in Defendants' adverse actions.

53. In subjecting Plaintiff to adverse employment action on the basis of gender, Defendant intentionally discriminated against Plaintiff with respect to compensation, terms, or privileges of her employment.

54. As a proximate result of the aforementioned intentional discriminatory acts of Defendant, through its employees and/or agents, Plaintiff has suffered damages as alleged herein.

13

55.     The aforementioned intentional discriminatory acts of Defendant, through its employees and/or agents, give rise to a cause of action under Title VII, the ADA, ADEA, the Equal Pay Act (29 U.S.C. §§ 621–634)), and the Utah Antidiscrimination Act. In particular, Title VII, the ADA, ADEA, the Equal Pay Act (29 U.S.C. §§ 621–634)), and the Utah Antidiscrimination Act. forbids discrimination against any employee on the basis of gender with respect to the compensation, terms, conditions, or privileges of employment.

56.     Should Plaintiff prevail on her claim of gender discrimination resulting in vindication of her civil rights, then Plaintiff is entitled to reasonable attorney fees pursuant to Title VII, the ADA, ADEA, the Equal Pay Act (29 U.S.C. §§ 621–634)), and the Utah Antidiscrimination Act.

## Count Two

### (Retaliation by Defendant for
### Plaintiff Engaging in Protected Activities)

57. The foregoing paragraphs are realleged and incorporated herein by reference.

58. The Jordan Valley Medical Center's conduct as alleged above constitutes retaliation against Plaintiff because she engaged in an activity that is protected by Title VII, the ADA, ADEA, the Equal Pay Act (29 U.S.C. §§ 621–634)), and the Utah Antidiscrimination Act.

59. As an employee of Defendant, Plaintiff Heath was protected against retaliatory adverse employment action for engaging in statutorily protected activity under Title VII, the ADA, ADEA, the Equal Pay Act (29 U.S.C. §§ 621–634)), and the Utah Antidiscrimination Act. More specifically, Plaintiff was protected against retaliatory adverse employment action for opposing any practice of Defendant that amounted to an unlawful employment practice under Title VII, the ADA, ADEA, the Equal Pay Act (29 U.S.C. §§ 621–634)), and the Utah Antidiscrimination Act. Further, Plaintiff was protected against retaliation in employment decisions for opposing gender discrimination in the workplace.

60. In opposing the discriminatory behavior, Plaintiff had a good faith, reasonable belief that she had been or was being subjected to unlawful discrimination on the basis of gender. As such, Plaintiff engaged in statutorily protected activity within the meaning of Title VII, the ADA, ADEA, the Equal Pay Act (29 U.S.C. §§ 621–634)), and the Utah Antidiscrimination Act.

61. The retaliatory acts were likely to deter employees from engaging in protected activity. As such, the retaliatory acts constitute adverse employment actions for the purposes of Title VII, the ADA, ADEA, the Equal Pay Act (29 U.S.C. §§ 621–634)), and the Utah Antidiscrimination Act.

62. Plaintiff reasonably believed Defendant's adverse actions were related to age discrimination.

63. A causal connection exists between the protected activity and the materially adverse action taken by Defendant.

## Count Three
### (Hostile and Abusive Working Environment)

64. The foregoing paragraphs are realleged and incorporated herein by reference.

65. The Jordan Valley Medical Center's conduct as alleged above constitutes a hostile and abusive working environment in violation of Title VII, the ADA, ADEA, the Equal Pay Act (29 U.S.C. §§ 621–634)), and the Utah Antidiscrimination Act. .

66. A causal connection exists between Defendant's acts of age discrimination and the hostile working environment.

## Count Four
### (Breach of Contract for Material Misrepresentation)

67. The foregoing paragraphs are realleged and incorporated herein by reference.

68. Heath was offered employment at Jordan Valley Medical Center with the promise that she would be paid equal to other CT employees including all male employees.

69. Heath was convinced to accept a lesser offer based on Poulsen's misleading promise that she would be given a pay raise equal or more than other CT employees because of her credentials, experience, training and skill.

70. Jordan Valley Medical Center breached its agreement with Heath by intentionally misrepresenting and refusing to honor its

17

promise to increase Heath's pay equal to other CT employees including male employees.

71. As a result of Jordan Valley Medical Center's breach of contract, Heath has suffered loss of income and other damages in an amount to be determined at trial.

### RELIEF REQUESTED/PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Jordan Valley Medical Centers for the following relief:

1. All statutory, general, compensatory damages that the law will allow, and for damages which can be established at trial.

2. An order awarding damages for wrongful, constructive termination through retaliation (lost income, liquidated damages);

3. An order awarding damages for breach of contract.

4. An order requiring Jordan Valley Medical Centers to pay all costs, legal fees, and expenses incurred in this action;

5. Any such further orders as the Court may deem just and proper under the circumstances, such as pre- and post-judgment interest.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues so triable.

DATED this 22nd day of October 2019.

                GREG SMITH AND ASSOCIATES PC

                /s/ Gregory B. Smith

                Gregory B. Smith